[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff and the defendant were married on December 31, 1986 in Stratford, Connecticut. There are no children issue of the marriage. The plaintiff was born on December 10, 1959, and will be thirty-two years old on her next birthday, and the defendant was born September 17, 1947 and will be forty-four years on his next birthday. The court finds that one of the parties to the marriage has resided continuously in the State of Connecticut for at least one year next preceding the date of the filing of the complaint and therefore the court has jurisdiction. The court further finds that the marriage of the parties has broken down irretrievably. Accordingly, the court grants a dissolution of the marriage.
The defendant was previously married and has two children of that marriage, ages nineteen and twenty-two. The plaintiff was married previously in 1984 for a brief period. The parties met at a restaurant where the defendant worked evenings as a CT Page 7014 piano player and the plaintiff worked part-time as a waitress in addition to her full time employment.
The court has reviewed all of the exhibits in the case. The court has reviewed the report of Earl Sanford which was introduced as Plaintiff's Exhibit B. It provides in there that the defendant admitted to being dependent on Rusty Nails when this report was done in April and May of 1990. The diagnosis on page 3 of the report indicated alcohol dependency and major debts; aimless and wandering. There was a recommendation that there be psychiatric consultation for the patient at the Norwalk Hospital with an ongoing sessions for the parties. In addition, there was a strong recommendation for him to become involved in AA at the Norwalk Hospital.
The earnings of the parties are reflected by the exhibits that set forth copies of their tax returns. The wife testified that the debt of the parties at one time was as high as $60,000 during the course of the marriage. It is clear that the husband in July of 1988 became the beneficiary of a trust, which trust is shown on his financial affidavit currently in the approximate sum of $200,000. Lump sum distributions are made in the amount of $25,000 per year. The plaintiff is presently employed at Bell and Partners and is a project manager earning $35,000 per year gross income. The husband admitted that the credit cards used to accumulate the debt during the course of the marriage were the wife's cards. She testifies to a discussion where he agreed to pay her debt, but says he now refuses to do that. In November of 1979 he used her credit card for credit while he was looking for a job in New Jersey. When that job didn't work out, they relocated and borrowed $5,000 from the wife's aunt to pay the security deposit, rent and moving costs for the Weston, Connecticut home. He has not paid that money back either. At some point, it is alleged that he said that he could break the trust and get some money up-front to cover debts, but found out later that he couldn't do that.
The wife even took care of the husband's mother when she was in Connecticut, despite the fact that she held a full time job at the time. When the parties separated, the husband asked the wife to return her wedding ring. The diamonds from the ring came from the jewelry of the husband's mother's estate. The jewelry of the estate was purchased from a source that is disputed by the parties, but it is clear that it was borrowed money in the sum of $6,000. The evidence indicates that the replacement value of the wedding ring was $21,000. He took the wedding ring and admits that he sold it and bought a car. Although the parties seemed to have been deeply in love with each other and tried to save the marriage, the wife indicated that it was in May of 1990 when the husband pointed a gun at her CT Page 7015 and threatened her that she finally separated from him.
The court has reviewed all of the exhibits in the case and the financial affidavits of the parties. The husband is presently earning $123,500 per year as shown on his financial affidavit of July 31st. The husband during the trial indicated that that job is subject to termination if the business is sold and he is not kept with it. The court is mindful of this and indicates that if that happens and he reverts to a lesser earning status, that that would be considered by this court a substantial change in circumstances in order to allow evidence as to modification. The court is fully aware of the statutory criteria set for in 46b-82 and 46b-81 and orders as follows:
1. The marriage is dissolved on the grounds of irretrievable breakdown.
2. The husband shall pay to the wife the sum of $150 per week as alimony. Said alimony shall terminate on the remarriage of the wife, the death of the wife, the death of the husband, cohabitation under the statute, or four years from the date hereof whichever shall occur first.
3. That the defendant shall pay to the plaintiff wife the sum of $50,000 as lump sum alimony. If the husband is able to retrieve the wedding ring that he took from the wife, that amount may be reduced by the replacement value of the ring of $21,000 so that he must pay her $29,000. The amount to be paid as lump sum alimony to the wife is by $15,000 being paid out of the next principle payment received by the husband out of the trust fund and $14,000 the next year out of the trust fund principle payment, or any other principle payment that is made sooner. In the event that he does not retrieve and give her the ring back, then $20,000 is to be paid out of the principle payment next received and $20,000 out of the next payment received and $10,000 out of the next principle payment received.
4. The parties have mutually divided their personal property.
5. The court expressly makes no orders concerning income tax returns and the responsibility therefor in this case.
6. That immediate wage execution issue.
7. That the court has reviewed the affidavit regarding attorneys' fees and is aware of the fact that the objection is to the amount to be paid by the husband rather than the reasonableness of the fee. The husband is ordered to pay towards the wife's attorney's fees the sum of $4,000. Alimony CT Page 7016 payments shall commence one week from the date hereof and be paid every week on that day of the week.
8. That the plaintiff's previous name Dawn Denvir be restored.
9. The husband shall bring current any alimony payments not made under Judge Novack's pendente lite order until the time of this decision.
10. The husband shall carry life insurance for the benefit of the wife the sum of $100,000 until such time as he has no further periodic alimony or lump sum alimony obligation. The defendant shall provide proof of such life insurance. As the husband pays down the lump sum alimony, he may reduce his insurance coverage accordingly;
KARAZIN, J.